1       UNITED STATES DISTRICT COURT
       WESTERN DISTRICT OF MICHIGAN
2         SOUTHERN DIVISION

3  _____

4  MICHAEL PUNG, as the Personal
   Representative of the ESTATE OF
5  TIMOTHY SCOTT PUNG,

6        Plaintiff,
             DOCKET NO. 1:18-cv-1334
7  vs.

8

   PETER M. KOPKE, in his personal
9  capacity; PATRICIA DEPRIEST, in
   her personal capacity;
10  STEVEN W. PICKENS, in his
   personal capacity; and COUNTY OF
11  ISABELLA COUNTY,

12        Defendants.

13  _____/

14

15  TRANSCRIPT OF MOTIONS HEARING AND RULE 16 SCHEDULING CONFERENCE

16   BEFORE THE HONORABLE ROBERT J. JONKER, CHIEF JUDGE

17       GRAND RAPIDS, MICHIGAN

18        July 15, 2019

19

20  Court Reporter:    Glenda Trexler
           Official Court Reporter
21          United States District Court
           685 Federal Building
22          110 Michigan Street, N.W.
           Grand Rapids, Michigan 49503

23

24  Proceedings reported by stenotype, transcript produced by

25  computer-aided transcription.

```
 1   A P P E A R A N C E S:

 2   FOR THE PLAINTIFF:

 3        MR. PHILIP LEE ELLISON
          OUTSIDE LEGAL COUNSEL, PLC
 4        P.O. Box 107
          Hemlock, Michigan 48626
 5        Phone:  (989) 642-0055
          Email: pellison@olcplc.com
 6
     FOR THE DEFENDANT KOPKE:
 7
          MR. WILLIAM SCOTT SELESKY
 8        MICHIGAN DEPARTMENT OF ATTORNEY GENERAL
          525 West Ottawa, 5th Floor
 9        Lansing, Michigan 48909
          Phone:  (517) 373-2560
10        Email: seleskyw1@michigan.gov

11   FOR THE DEFENDANT DEPRIEST:

12        MR. CHARLES ALLEN LAWLER
          CLARK HILL, PLC
13        212 East Grand River Avenue
          Lansing, Michigan 48906
14        Phone:  (517) 318-3016
          Email: clawler@clarkhill.com
15
     FOR THE DEFENDANTS PICKENS AND ISABELLA COUNTY:
16
          MR. BRADLEY CHARLES YANALUNAS
17        CUMMINGS, McCLOREY, DAVIS & ACHO, PLC
          2851 Charlevoix Drive, S.E., Suite 327
18        Grand Rapids, Michigan 49546
          Phone:  (616) 975-7470
19        Email:  byanalunas@cmda-law.com

20                        *   *   *   *   *

21

22

23

24

25
```

```
 1                                    Grand Rapids, Michigan

 2                                    July 15, 2019

 3                                    3:06 p.m.

 4                    P R O C E E D I N G S

 5              THE COURT:  We're here on the case of Michael Pung

 6    against Peter Kopke and others, 1:18-cv-1334.  It's the time

 7    set for a Rule 16.

 8              Let's start with appearances, please.

 9              MR. ELLISON:  Good afternoon, Your Honor,

10    Philip Ellison appearing on behalf of the plaintiff.

11              THE COURT:  Thank you.

12              MR. SELESKY:  Assistant Attorney General

13    William Selesky on behalf of Peter Kopke.

14              THE COURT:  All right.  Thank you.

15              MR. LAWLER:  Charles Lawler on behalf of

16    Pat DePriest.

17              MR. YANALUNAS:  Brad Yanalunas on behalf of Pickens

18    and the County.

19              THE COURT:  All right.  Thank you.

20              So it's a Rule 16 as I said.  There's also a number

21    of motions pending.  I think every defendant has at least one

22    pending.  The first one that Mr. Pickens filed was addressed to

23    the original Complaint, so that's something we can dismiss as

24    moot in light of the First Amended Complaint.  Docket entry 15

25    was that motion.  But Mr. Pickens and Isabella County have
```

1    renewed their position in a later motion directed to the

2    First Amended Complaint.  So I think they are all on file as

3    challenging the Complaint as submitted.

4         I appreciate the parties' submission of the Joint

5    Status Report and calling the Rafaeli case to my attention.

6         Are any of you involved in that case pending in the

7    Michigan Supreme Court?

8         *MR. ELLISON:*  Not -- Your Honor, not directly.  My

9    office is representing 10 or 12 class actions that involve that

10   very case.  Mr. Yalunas [sic] and also Mr. Lawler are both

11   involved.  Of course, Mr. Ya --

12        *MR. YANALUNAS:*  Yanalunas.

13        *MR. ELLISON:*  Yanalunas.  I always get that wrong.

14        *MR. YANALUNAS:*  It's a tough one.

15        *MR. ELLISON:*  Brad.

16        *MR. YANALUNAS:*  Yeah, Brad.  That will work.

17        *MR. ELLISON:*  -- and Mr. Vander Laan from his office

18   as well, we have been basically on all the cases cross

19   combined, so we all know each other and work on those cases

20   very much.

21        So the part 2 of this case, the Fifth Amendment and

22   Eighth Amendment claims, are the same claims that have been

23   raised in all of those other cases.

24        *THE COURT:*  Okay.  And what is the schedule right

25   now?  I saw briefing ongoing.  Has the Supreme Court of

```
 1   Michigan set an argument date or anything like that?
 2           MR. ELLISON:  They have finished -- all the briefing
 3   has concluded.  We are waiting -- they take a summer session, a
 4   break, which they have now not opted to with the
 5   constitutionality of a few things that have come up with the
 6   legislature, but we anticipate, just from my own practice being
 7   before the Supreme Court, I'm expecting oral arguments in
 8   October or November of this year.
 9           THE COURT:  All right.
10           MR. ELLISON:  And then they make their decision when
11   they make their decision thereafter.
12           THE COURT:  All right.  And that involves, as you
13   said, a direct challenge under Fifth and Eighth Amendment to
14   the issue you're raising on whether or not the tax collector
15   gets the equity in the house?
16           MR. ELLISON:  That's correct.  That's correct.
17           THE COURT:  Okay.  So your position is if the
18   Michigan Supreme Court rules in favor of the property owner,
19   what happened here, at least to the extent of the equity, would
20   have to fall?
21           MR. ELLISON:  That's correct.
22           THE COURT:  Okay.
23           MR. ELLISON:  And, Judge, I mean, obviously the Fifth
24   and Eighth Amendment you could come out differently on.
25           THE COURT:  Right.
```

1          *MR. ELLISON:*  But as to the inverse condemnation, you

2     would be bound by the Michigan Supreme Court's conclusion on

3     that.

4          *THE COURT:*  All right.  And from the defense

5     perspective, at least for the two who have involvement, do you

6     agree that if the Michigan Supreme Court rules for the property

7     owner, that you've got to give up the equity here?  Or do you

8     have another pathway?  Or haven't you thought about it yet?

9          *MR. LAWLER:*  I guess we haven't thought about it,

10    Your Honor.  I filed an amicus brief on behalf of the

11    Association of County Treasurers.  I've known Phil for --

12    Mr. Ellison over the course of, I don't know, a year plus on a

13    number of different cases against the county treasurers.  But I

14    think generally speaking he's probably accurate, we may look

15    for some other type of relief if we can find it at that time.

16          *MR. YANALUNAS:*  I agree.

17          *THE COURT:*  All right.  A related question -- maybe

18    related, at least it's related in my mind, for Mr. Ellison --

19    at this stage of this case are you just challenging the

20    defendants' effort, at least Isabella County's effort, to get

21    the equity above $2,000 the house is worth, or are you

22    challenging the actual foreclosure and trying to unwind that?

23          *MR. ELLISON:*  We're not trying to unwind the

24    foreclosure at all.  Not at all.

25          *THE COURT:*  So you're just going after the money at

1     this point?

2             *MR. ELLISON:*  After the money and afterwards, that's

3     correct.

4             *THE COURT:*  And at this stage who is in possession of

5     the real estate?

6             *MR. ELLISON:*  The county treasurer of Isabella.

7             *THE COURT:*  So they do have it?

8             *MR. ELLISON:*  They do.  And then as I understand, the

9     foreclosure sale is tomorrow.

10            *THE COURT:*  Okay.

11            *MR. LAWLER:*  Your Honor --

12            *THE COURT:*  Yes.  Go ahead.

13            *MR. LAWLER:*  Excuse me.  The other thing I would

14    point out is that Mr. Kopke and my client, Ms. DePriest, are

15    kind of ancillary as part of this case, and Mr. Ellison and I

16    have had some discussions about maybe . . .

17            *THE COURT:*  Well, right.  All the individuals are in

18    on the Count I conspiracy or what I take it, Mr. Ellison, you

19    would call the first part of the case.

20            *MR. ELLISON:*  Correct.

21            *THE COURT:*  On the second part of the case, the

22    Fifth Amendment and Eighth Amendment, I guess that's really

23    only against the county in Counts II and IV and Mr. Pickens in

24    Counts III and V.

25            *MR. ELLISON:*  That's correct.

1          *THE COURT:*  Okay.  Or did I get the numbers just
2     wrong?

3          *MR. ELLISON:*  You got the gist of it right.  I'm not
4     sure what the numbers are, but, yes, you got the gist of it,
5     Your Honor.

6          *THE COURT:*  All right.  And I guess the question --
7     this is another spinoff question starting for Mr. Ellison --
8     given that the Michigan Supreme Court is looking at this
9     question under the Fifth Amendment, under the Eighth Amendment,
10    apparently it isn't all that well settled, no matter how
11    clearly you think it should be, why doesn't that mean that
12    Pickens, at least as to those counts, ought to have qualified
13    immunity because it isn't clearly established?

14         *MR. ELLISON:*  So the Eighth Amendment claim I would
15    argue -- I would acknowledge is a very close question.  I know
16    this is an issue that's come up in all of the other cases that
17    we were referencing earlier.

18         I think the Fifth Amendment claim is not so much,
19    because there's a U.S. Supreme Court case called U.S. v. Lawton
20    that was established in 1880-ish, 20 years after the Civil War,
21    that said in these circumstances keeping that excess equity is
22    a violation -- would be a violation of the Fifth Amendment.  So
23    we would -- it's our position that that provided adequate
24    notice to Mr. Pickens that this would be unconstitutional in
25    his actions.

1          The reason why I think the federal courts haven't got

2     on to this very much recently is because --

3          THE COURT:  Williamson County.

4          MR. ELLISON:  Williamson County, yeah.  And so now

5     with Knick coming down about, what, two or three weeks ago, I

6     think this opens up a whole new opportunity for federal courts

7     to start establishing some law here.  And I think this is why

8     the idea of Lawton being able to be raised in this instance

9     will be something the courts will have some opportunity to

10    start parsing out.  Whether in fact it does provide that

11    adequate notice to make it readily apparent so that qualified

12    immunity would not apply or conversely would apply.

13         THE COURT:  All right.  Mr. Yanalunas, do you want to

14    be heard on that?  You've heard at least the plaintiff's

15    summary of why there would be clearly established law on the

16    Fifth Amendment.  What's your position on that?

17         MR. YANALUNAS:  Well, I think that -- you know, I

18    went through the briefs before this hearing.  I'm not the

19    primary attorney on this, but my general understanding of our

20    position is that we were able to distinguish the Lawton case

21    and I think the Eighth Amendment cases that plaintiff is

22    relying on with regard to the qualified immunity argument, and,

23    therefore, there was no clearly established law at that point

24    in time, as Your Honor said earlier, and that's the gist of our

25    argument.

1    *THE COURT:*  All right.  And do you have a more

2    specific response to Mr. Ellison on why the Lawton case isn't

3    enough?

4    *MR. YANALUNAS:*  Without reading it, Your Honor, you

5    know, had I known that this was going to be addressed at this

6    hearing, I probably would have, you know, delved into the case

7    itself to better answer your question, but I don't want to, you

8    know, swing one way or the other without absolutely knowing.

9    *THE COURT:*  All right.  Before we turn a little bit

10    more to that Count I, I want to make sure I understand that.

11    Does anybody want to highlight their position any

12    further on the Fifth or Eighth Amendment issues?

13    *MR. ELLISON:*  The only other thing, Judge, I mean, my

14    point in bringing this originally was it was to challenge some

15    of these notions about Williamson County going forward, and I

16    think now that's pretty much resolved.

17    One of the options -- and I will say, it is a bit

18    unusual that an Isabella County treasurer and the County of

19    Isabella is here.  If the Court is inclined, I mean, we're not

20    opposed to the idea of severance of those issues because the --

21    and remanding those back to the Eastern District of Michigan

22    where I do have a class action that was just started with

23    Judge Ludington over there involving Isabella County itself.

24    So I would offer that as an opportunity, because that would

25    narrow the scope of the Court's issues here and allow just for

 1   the due process conspiracy claim which does have the

 2   jurisdictional hook through Mr. Kopke as a defendant.

 3           *THE COURT:*  All right.  Anything that Mr. Selesky

 4   wants to address on this?  I know it's not exactly your issue

 5   so far, but I haven't heard anything from you on it.  If

 6   there's anything you want to address.

 7           *MR. SELESKY:*  Sure, Judge.  Mr. Kopke's -- I think

 8   it's a correct statement of the jurisdictional hook.  I think

 9   Mr. Kopke's only pled involvement or interest in this case

10   would be the conspiracy count as far as I can think.  I don't

11   think the State or Mr. Kopke takes any particular position on

12   the other issues.

13           *THE COURT:*  All right.  Mr. Lawler or Mr. Yanalunas,

14   anything else you want to address on these Fifth Amendment and

15   Eighth Amendment issues?

16           *MR. LAWLER:*  No, thank you, Your Honor.

17           *MR. YANALUNAS:*  No, thank you, Your Honor.

18           *THE COURT:*  Okay.  So let me talk about the Count I a

19   minute and make sure I understand it.  The way I -- the

20   State -- let me back up this way.  What I'm getting, maybe more

21   from the briefs than the First Amended Complaint, is the idea

22   that plaintiff's contention is the government can't take the

23   equity, 200,000 or thereabouts, just to collect a $2,000 tax

24   bill.  Especially -- and this is where I guess I'm segueing

25   into Count I -- especially where in the plaintiff's view the

1   $2,000 bill was never properly established under Michigan law.

2   That in effect the plaintiff had a property interest in making

3   sure that any mature tax liability was properly created before

4   that December 31 deadline.  It wasn't, and, therefore, the

5   whole basis of the tax claim was substantively wrong.  And I

6   take it, if I'm reading it right -- and I may not be, but

7   that's what I'm getting primarily from the briefing -- then the

8   plaintiff's further argument would be that's why I'm not

9   precluded by what the Michigan Court of Appeals did.  All they

10  did was said procedurally the notice provided in the state

11  court foreclosure was good enough, that passes fundamental

12  due process, but it didn't pass on the substantive liability or

13  not of the tax bill in the first place.  So that's what I'm

14  gleaning.  Now, I don't know if that's it or if there's more to

15  it, so let me turn to Mr. Ellison first to make sure I

16  understand.

17          *MR. ELLISON:*  That -- I think you are precisely --

18  that is precisely the argument that -- when they keep raising

19  about Rooker-Feldman and the idea of preclusion, those are how

20  I'm cleaving this case into -- into dividing, you know, part 1

21  into two subparts, if you will.  Is that this first part of

22  this aspect is that the tax that was originally assessed was

23  not even owed based on a prior ruling of ALJ Lasher from the

24  Michigan Tax Tribunal.  The defense on that part of it would be

25  that there was a process that was provided by Ms. DePriest on

1    that.  We are taking the position that that process has either

2    not been provided, which Mr. Lawler's and my office are having

3    some discussions on that, but also the fact that ALJ Lasher's

4    decision is binding on them from going forward, from being able

5    to assert this tax.

6          And what happened is -- from my client's perspective

7    is that the tax was reactivated.  The 2000 -- the value of the

8    PRE was reactivated unbeknowingly to them, and they think it

9    was because it was an agreement between the parties.  And

10   actually there's testimony from Ms. DePriest herself that this

11   was an understanding between the parties.  At least to

12   Mr. Kopke and Ms. DePriest, that this had to occur when it

13   shouldn't have.  And as a result -- a direct result of that

14   caused a chain of events to occur that ultimately led to the

15   loss of the equity in the property.

16         *THE COURT:*  I'm going to hear from the defendants in

17   a minute, but help me understand more about the Mr. Kopke piece

18   of it because that part doesn't come through too clearly to me

19   in the First Amended Complaint or even in the briefing, to tell

20   you the truth.  It's hard for me to understand what your hook

21   is on Kopke and how he fits in.

22         *MR. ELLISON:*  Kopke is difficult because I don't know

23   either.  And the only reason why -- the only reason why I would

24   acknowledge that Kopke is there is because of the testimony

25   that's attached to the -- in the transcript of the

1    First Amended Complaint where Ms. DePriest indicated that she

2    consulted with Mr. Kopke and Mr. Kopke and her reached an

3    agreement that they would have to reactivate the PRE, directly

4    contrary to ALJ Lasher's decision on that matter.

5         I will need discovery to flesh out exactly what the

6    scope of that understanding and that agreement or that

7    communication was between each other.  All I have available to

8    me at this prediscovery stage is at least an acknowledgment by

9    Ms. DePriest in her sworn testimony before the Isabella County

10    trial court that in fact there was an agreement that was

11    reached between the two of them that way.

12         As a result of that, Ms. DePriest then reactivated

13    the PRE, the 2,000 some -- you know, a little less than $2,000,

14    which then allowed Mr. Pickens to then pick up the ball and run

15    down the fact that he was able to foreclose on these

16    properties.  And, of course, now we are here today where

17    tomorrow the property is being sold for a tax that was never

18    owed.

19         *THE COURT:*  Okay.  And if you're right, if you win

20    all across the board down the road somewhere, you get your

21    equity under Fifth Amendment, Eighth Amendment, or both, what

22    added damages do you see here?  I mean, as a practical matter

23    why do you care if you keep the individuals in?  On any theory.

24         *MR. ELLISON:*  Well, two reasons.  One is that would

25    be the value of, um -- well, two reasons -- just -- I guess at

1    a very baseline it would be it's just two different theories of

2    liability.  One would be Ms. DePriest would be responsible

3    through her actions as well as the individuals by working

4    together.  To use lawful means to reach an unlawful end by

5    utilizing these different responsibilities and tools that they

6    have as part of being the government.

7              If that process doesn't work in and of itself, then

8    we also have the new arguments that are now available in

9    federal court for the Fifth Amendment and the Eighth Amendment

10   claim.

11             So at minimum they are alternate theories that we can

12   plead.  And, of course, alternate theories can be pled,

13   obviously.

14             Now, what more dollarwise would be available, I'm not

15   sure there would be any more dollarwise available.  So perhaps

16   the Fifth Amendment claim would be -- myself, I think the

17   strongest of the three claims by far is the Fifth Amendment

18   takings claim.  But the same token is we also don't want to let

19   Ms. DePriest off the hook in case that doesn't work or you were

20   to come to some contrary conclusion.

21             Judge Maloney, for example, originally in a case

22   similar to this one called Wayside Church concluded -- now, the

23   litigants there took a little bit different position than I've

24   taken as to when the taking occurred, but Judge Maloney

25   ultimately concluded there was no taking that existed in those

1    circumstances.  Which shocked me.  But he has since, since the

2    Sixth Circuit and a couple of other decisions, he has reopened

3    that case under Rule 60(b) and that case is now potentially

4    going to be reheard by Judge Maloney going forward on this as

5    well.

6            THE COURT:  All right.

7            MR. ELLISON:  So anyway, I hope that answers your

8    question.

9            THE COURT:  It does.  Thank you.

10           Let's just go down and start with Mr. Selesky and try

11    to get the defense summation on that Count I.  How you see

12    Count I and the problems you see with it.

13           MR. SELESKY:  So, Judge, from Kopke's perspective,

14    Kopke is a state ALJ in the Michigan Tax Tribunal, and I think

15    specifically as it relates to this case he's the chief clerk,

16    which essentially your job in that position is to correspond

17    with the public.  You're the public-facing cog of the

18    Tax Tribunal.  Which if the Tax Tribunal gets a letter, you're

19    the one who responds to it.  You get a call, you're the one who

20    responds to it on a sort of administrative basis.

21           The underlying tax dispute that made its way through

22    state proceedings of various forms, Kopke was never involved in

23    any of that before.  This is the first mention of Kopke until

24    this transcript reference which is mentioned in the Complaint.

25    I think just, honestly, my read of that, I mean, it's like a

1    one-page passing reference that I think when taken in the

2    context of what Mr. Kopke's job is, sort of in the context of

3    qualified immunity, sort of shows what it is.  That for one

4    thing Mr. Kopke as a state ALJ of the Tax Tribunal without any

5    particular jurisdiction over the underlying tax dispute would

6    just have no authority over this matter in any conceivable

7    sense.  So the idea of his involvement in a conspiracy to

8    violate due process, just on that basis alone, he's not

9    someone -- unlike the other codefendants who conceivably had a

10   role in the underlying tax dispute -- he just wouldn't have.

11         And then beyond that, I think the conduct described

12   would also fall pretty neatly into Mr. Kopke's official duties

13   in this position.  So I think that goes to just the -- how --

14   the nature of the pleadings in the Complaint and also to the

15   qualified immunity piece.  Frankly, I think Mr. Kopke's basic

16   position is he's just not sure why he's in this lawsuit.

17         *THE COURT:*  Okay.  Thank you.

18         We'll go to Mr. --

19         *MR. LAWLER:*  Lawler.

20         *THE COURT:*  Is it Lawton?

21         *MR. LAWLER:*  Lawler.

22         *THE COURT:*  Lawler.  Thank you.

23         *MR. LAWLER:*  L-A-W-L-E-R.

24         *THE COURT:*  Okay.  Thank you.

25         *MR. LAWLER:*  I'm here for the assessor.  I think to

1   use the term "agreement" is a little bit strong.  It was a

2   simple correspondence from the assessor.  I've got to be

3   careful here, but it was a simple correspondence asking if

4   there was an affidavit required.

5           You know, what happens on December 31st, Your Honor,

6   is we decide who the taxpayer of record is.  There's board of

7   reviews that happen later on that sometimes change what the

8   taxable value is.  In this simple case my client just simply as

9   a ministerial function called Mr. Kopke, who was an expert,

10  asked if she had to have an affidavit and was required to have

11  an affidavit by statute and there wasn't one.

12          That's -- I mean, her being here is a waste.  It's

13  not going to affect, you know, Mr. Ellison's ability to get

14  damages from the county.  It's just -- you know, you've got an

15  elderly woman who was the assessor who is dragged into a case

16  that she doesn't really need to be in.  And I, frankly, don't

17  think there's really a claim -- cause of action against her.

18          *THE COURT:*  Okay.  Thank you.

19          Mr. Yanalunas.

20          *MR. YANALUNAS:*  Your Honor, I think more simply, I

21  think we make the Rooker-Feldman and the res judicata arguments

22  with respect to this particular count.  It's something that

23  could have, if it wasn't already -- Your Honor mentioned it

24  briefly, the due process part was brought up in the in rem

25  action.  But I think one of our primary arguments is that this

1  is something that could have been addressed at the state court

2  level and it's essentially deemed waived in general as to our

3  clients.

4        And plus, I'd like to add that Pickens, being the

5  treasurer, wasn't even involved in the assessor portion of

6  this.  This is something that I'm not quite sure why this count

7  addresses us, but I'm sure that's something that would come out

8  later in the litigation.

9        *THE COURT:*  All right.  Well, thank you all.  I want

10 to do a ruling on the motions now just to move the case

11 forward, and after the ruling if you all get together and you

12 decide for whatever combination of reasons you'd rather be with

13 Judge Ludington in the Eastern District, that's fine with me.

14 But let me at least move the case forward based on how I see it

15 after going through your papers.

16       You've all filed comprehensive papers on these

17 motions.  And as I said, the first one, 15, was addressed to

18 the original Complaint which was superseded by the First

19 Amended Complaint, so that's just dismissed as moot.

20       But I'm looking at docket entry 22 which is the

21 Isabella County and Steve Pickens motion to dismiss.  There's a

22 motion from Mr. Kopke, that's 34.  And then DePriest has a

23 motion, an amended motion, 36 and 39.  And I'm comfortable from

24 what I've read in the papers and from what I'm hearing here to

25 give you a ruling on that.

1          Let me start with the two counts against

2    Isabella County, which I think are Counts II and IV.  II is the

3    Eighth Amendment excessive fine and IV is the just

4    compensation.  And those are substantive counts against

5    Isabella County that basically challenge the ability of the

6    taxing authority to take property of a property holder, of a

7    taxpayer, beyond the value that the taxable authority says is

8    due for the tax.  So the tax authority here says the tax due is

9    2,000, it's contested by the plaintiff -- we'll talk about that

10   later -- but assuming that's right, what they propose to take

11   is the whole property, which is either 180 to 200 hundred

12   thousand dollars' worth of value.  And plaintiff's position is

13   if they can do that, keep $200,000 to satisfy a $2,000 tax,

14   that's effectively seizing property without a just

15   compensation.  Or maybe it's an excessive fine or forfeiture

16   under the Eighth Amendment.  And I think both of those claims

17   need to stay.  I don't think there's a basis to dismiss those.

18   I'm going to deny the defense motions to dismiss accordingly.

19          I think those issues are on their face good claims.

20   It may be that the Eighth Amendment excessive fines and

21   forfeitures isn't going to apply outside of a criminal hook,

22   that's possible, but I think it's also possible that it will.

23   I don't think it is clearly established at this point one way

24   or the other.  I think that's why the Michigan Supreme Court is

25   looking at in Rafaeli, and I've looked at that enough to see

1    amicus briefs already from all the standard players on property

2    rights, from specifically the foundation on down.  And there

3    ought to be, and I think will be, some final answer from the

4    Michigan Supreme Court.  And, frankly, regardless of what they

5    decide on the constitutional claim, if the case stays here,

6    I'll have to make my own claim and decision on it.  I don't see

7    anything, though, in the case law that the parties have briefed

8    that is allowing me at this stage to decide those issues as a

9    matter of law.

10           Certainly the just compensation, at least when you go

11    back to Lawton, gives the plaintiff a leg up perhaps going into

12    the argument.  I think Mr. Ellison may well be right that the

13    reason we haven't seen a lot of development in that arena is

14    because Williamson County until this past term when that was

15    abrogated kept a lot of this litigation out of the federal

16    court and ready for the state system.  But that said, I don't

17    think, for whatever combination of reasons, that there's been a

18    straight line from Lawton to 2019.  There's arguments that the

19    defense will be able to make there too.  And so I think that

20    those are live claims as they are asserted against the county,

21    but I think with respect to the individual defendant,

22    Mr. Pickens, and he's allegedly liable on parallel Counts III

23    and V, I do think that the defense for Mr. Pickens is entitled

24    to qualified immunity on those grounds because I don't think

25    it's clearly established.  I think that's why the Michigan

1    Supreme Court has it and needs to deal with it.  And I also

2    think as a practical matter the plaintiff gets full relief if

3    he prevails on either of those theories against the county

4    directly.

5             The only other things to add on that, and it's

6    because the defendants not only contest the underlying theory

7    of, you know, excessive fines and lack of just compensation,

8    they are also contending, as I understand it, that there's some

9    jurisdictional hurdles for this Court, a combination, the Tax

10   Injunction Act being one, and I don't think that the Tax

11   Injunction Act precludes me from dealing with these things.

12             There's a reference in one of the reply briefs from

13   the defense saying, "Well, those cases that the plaintiff cites

14   from Judge Solomon in the D.C. Circuit," and I think there's

15   one in the Second Circuit too, "they have been superseded by

16   the Supreme Court's decision in the direct marketing case from

17   2015."  And I just don't think so.  If anything, that

18   Supreme Court case puts a narrower neck, I think, around the

19   scope of the Tax Injunction Act, the finding that the court

20   didn't lack jurisdiction to enjoin a portion of the Colorado

21   procedure that required the taxing authorities to give notice

22   to their own citizens about state tax-collection issues.  And

23   here what the plaintiffs are seeking, and Mr. Ellison made this

24   clear a minute ago, is money.  They want the equity in their

25   house, whatever that turns out to be.  The tax claim is $2,000.

1    And they are not even asking for an injunction from this Court.

2    And even to the extent they were, they are not addressing that

3    to the portion of the claimed tax due but simply to the value

4    of the property above it.  So I don't think that the

5    Tax Injunction Act can properly deprive the Court of

6    jurisdiction.

7         We'll talk more about Rooker-Feldman and res judicata

8    on the Count I issues.  I think particularly with respect to

9    the issues in Counts II and IV, Eighth Amendment and

10   Fifth Amendment, there's nothing in the state court process and

11   decision-making that has treaded on those doctrines.  They just

12   haven't been litigated.

13        To the extent there was an opportunity to litigate

14   any of the issues, Michigan law doesn't require a joinder in

15   any event, and I don't know how the property owner could have

16   adjoined this particular issue in an in rem forfeiture --

17   foreclosure rather.  I think that's a limited process, and all

18   the Michigan Court of Appeals did is said for that limited

19   foreclosure process due process was satisfied:  The procedural

20   dictates of notice and an opportunity to be heard.  And that's

21   a very limited ruling.  It's important as far as it goes.  It

22   prevents Mr. Ellison from coming here and contesting the

23   foreclosure itself, for example, he can't unwind that anymore,

24   but I don't think there's anything in there that precludes him

25   either on a collateral estoppel basis or on a claim-preclusion

1    basis or on a Rooker-Feldman basis from litigating the claims

2    here.

3             On Count I, the conspiracy charge against the

4    individual defendants, Mr. Kopke from the State and then

5    Mr. Pickens the treasurer in Isabella County and Ms. DePriest

6    the assessor, I'm going to grant the defense motions to dismiss

7    but with leave for Mr. Ellison to replead.  And two things in

8    particular on that.

9             As I think I said, or at least suggested in my

10   questions, I in reading the First Amended Complaint itself had

11   a very hard time understanding what exactly was being contested

12   and challenged by the plaintiff.  What the argument was.  What

13   aspect of due process was being challenged.  And certainly when

14   you have the state court of appeals I think in 2017 saying no

15   due process violation, on the face of things I get why the

16   defense would say, "Hey, we've already been down this road.  We

17   should prevail."

18            In reading the briefing my sense was broadened that

19   the plaintiff really wasn't challenging the procedural

20   due process of that foreclosure itself but as I said earlier

21   the underlying validity of the $2,000 tax bill, that it wasn't

22   prepared and handled in accordance with Michigan law, and the

23   claim is that the plaintiff had a property interest in the tax

24   bill ripening, if you will, as provided in the Michigan State

25   process, and that when it didn't ripen and the taxing

1    authorities, nonetheless, used that claim as a basis to proceed

2    with the foreclosure, even in getting tax bill dollars, $2,000,

3    that's a problem from the plaintiff's perspective of

4    due process, depriving the plaintiff of that right without

5    due process of law.  Or maybe in more colloquial terms an

6    officer, whether assessor, whether state officer or county

7    treasurer, ought to know that you can't collect a bogus tax

8    bill.  They ought to know that.  And I don't know whether the

9    plaintiff can prevail on that or not, but that is the theory

10   that as I read the briefing started to come out.  And I think

11   the plaintiff ought to have a chance to articulate that more

12   clearly in a more focused way.  And then the defense may be

13   able to test that.  And we can find out as well more about what

14   the plaintiff believes, if necessary on information and belief,

15   as to Mr. Kopke's role or not because that's pretty thin.  And

16   I am comfortable dismissing it today, Count I, for those

17   reasons, but with leave to replead so that that issue can be

18   articulated as clearly and cleanly as I think the briefing

19   starts to get to, and then I'll look at the defense motions, if

20   there are more motions, once they are on file.

21          The other reason and claim that I think the plaintiff

22   conceivably could plead in a Count I type of claim is one that

23   I don't see very often, but when I read the papers -- again,

24   not so much the Complaint but the papers -- made me wonder.

25   There's an old case -- old, 2000 -- Village of Willowbrook

1    against Olech, O-L-E-C-H, 120 S.C. 1073 or 528 U.S. 562, and

2    it's essentially a class-of-one equal protection theory where

3    the Supreme Court says in unusual cases you can't as a citizen

4    state a class-of-one equal protection claim if the public

5    authority is acting irrationally and wholly arbitrarily or in

6    some bad faith like illegitimate animus or ill will.

7         In the case of Olech itself it involved an easement

8    for I think utility purposes, but some kind of an easement that

9    the public authorities wanted.  And I think this is one of

10   those claims where conceivably the plaintiff could in good

11   faith state a claim along those lines.  I'll at least give them

12   a chance to do that.  Because, again, in the briefing the

13   argument comes through that the whole tax court litigation

14   really burned DePriest and Pickens and they decided to get

15   even, they were upset, and they felt like their status was in

16   some ways eroded, and for that reason, you know, as the

17   plaintiff may plead, they concocted a bogus bill, collected it,

18   and now want to seize the entire property and the value that

19   goes with it.

20        I don't know whether there's anything to it that the

21   plaintiff will ultimately be able to establish or that the

22   plaintiff will even plead it in good faith, but that remains to

23   be seen, and I'll give the plaintiff an opportunity to do that.

24        So in summary, I grant the defense motions with

25   respect to Counts III and V on a qualified immunity basis

1　because I don't think the excessive fines or the just

2　compensation theory is clearly established in a way that would

3　get around the qualified immunity of Mr. Pickens.  But deny it

4　as to Counts II and IV, the substantive counts against the

5　county.  And I'll grant the motion as to Count I but with leave

6　for the plaintiff to try to replead that along the lines

7　we just described, or I just described, and that we discussed.

8　　　　　　　From your perspective, Mr. Ellison, how long do you

9　want to try to file and prepare I guess it would be a Second

10　Amended Complaint?

11　　　　　　　*MR. ELLISON:*  I was going to say, I would ask for

12　28 days.  And the only reason, I have three briefs due at the

13　Michigan Court of Appeals and I have a trial at the end of this

14　month, so if I could get to the middle of August, that would

15　be --

16　　　　　　　*THE COURT:*  All right.  Why don't we just make it the

17　end of August, August 31.

18　　　　　　　*MR. ELLISON:*  Very good.

19　　　　　　　*THE COURT:*  In terms of the rest of the schedule,

20　going back to the Joint Status Report, once that gets filed, I

21　presume the defense may well renew motions to dismiss, and if

22　so, we'll deal with those.  But let's move forward with a case

23　schedule so that you can continue to move forward as parties.

24　　　　　　　And let's say initial disclosures by September 15.

25　So everybody will have in hand the Second Amended Complaint and

```
1   you'll know at least what disclosures you want to make.
2          I think I kind of bump these dates down a little ways
3   to accommodate some of the time for repleading and potential
4   motion practice.  So leave discovery open through March 31 and
5   make motion practice alive and well through April 30.  And then
6   we'll give you a trial schedule as part of the Case Management
7   Order.
8          If you are going to use experts for any issue on
9   which you have the burden of proof, disclose with reports by
10  January 31.  Responsive experts with reports by February 28.
11         Before we talk about ADR, from a case-scheduling
12  point of view, does that give the parties enough time to work
13  up the issues?
14         MR. ELLISON:  I think so.
15         THE COURT:  Everybody is okay with that?
16         MR. SELESKY:  Yes, Judge.
17         MR. YANALUNAS:  Yes, Your Honor.
18         THE COURT:  It sounds like you have a lot of moving
19  parts beyond this case.  This is one case, but you're all
20  engaged not only in watching Rafaeli but some of the other
21  cases including the class action.
22         Have those been certified yet?
23         MR. ELLISON:  One has been certified in the Michigan
24  Court of Claims, and you've actually just been assigned to
25  another one here fairly recently for about 12 counties in the
```

1    Western District.

2            THE COURT:  Okay.  So given that array, I don't know

3    what, if any, alternative dispute resolution makes sense to

4    you, but I'm happy to hear you on that.  Because on the one

5    hand, this is part and parcel potentially of a much bigger

6    issue.  You know, on the other hand, this case has already gone

7    through multiple years of litigation.  The delta between the

8    tax claimed and the equity is pretty significant.  And all the

9    plaintiff wants is money at this point.  So I don't know.  I

10   don't want you to have to litigate needlessly because that

11   burns money.

12           So where are you in terms of what you think would be

13   useful?

14           MR. ELLISON:  Go ahead.  You're jumping up first

15   here, so go ahead.

16           MR. LAWLER:  I'm not convinced it would be useful for

17   my -- it seems to me like they have probably been down that

18   path before.  I'm new to this.

19           But I would also want to point out one thing,

20   Your Honor, the class that was certified was certified in the

21   state, and the state was a single foreclosing governmental

22   unit, which is different than all the other cases.  So the fact

23   scenarios are really different as far as class.  So I wouldn't

24   want to put a lot more credence into that certification.

25           THE COURT:  Okay.  Well, what is your position on ADR

1    in this case?

2         MR. LAWLER:  No, thank you.

3         THE COURT:  Well, you're going to have to do

4    something, so -- I mean, it can be case evaluation.  Especially

5    if it's just money, that's okay.  But, I mean, why don't you

6    want to?  And I guess you have an individual, so maybe that's

7    why.

8         MR. LAWLER:  Your Honor, I've got an individual that

9    there's some facts that aren't on the record that would -- I

10   think would probably significantly change your opinion of her

11   position in this.

12        THE COURT:  Well, I mean, all I can deal with is

13   what's on the record, so if it isn't on the record, it doesn't

14   help me very much.

15        MR. YANALUNAS:  Your Honor, case evaluation would be

16   fine.

17        THE COURT:  Pardon me?

18        MR. YANALUNAS:  Case evaluation would be fine.

19        THE COURT:  Okay.  From your perspective, for

20   Isabella County at least, I mean, don't you see a problem here

21   if your county gets $200,000 of value for a $2,000 tax bill?

22   Doesn't that just sound wrong?

23        MR. YANALUNAS:  Well, Your Honor, I don't disagree

24   with the logic, if that's what your question is, but I think

25   our position is that going through the courts is not the proper

1    avenue of trying to change that.  The statute is the statute.

2    There has been no court that's found the statute which provides

3    the authority for the county treasurers to do what they do

4    unconstitutional.  It is the law.  And my understanding is that

5    that's what -- the courts should follow the law.  And that's --

6    our primary position is that we disagree with the avenue in

7    which the plaintiff is trying to change the law.  Rather he

8    should be going to his legislator and trying to get the state

9    legislature to change it.

10            *THE COURT:*  All right.  From the State's perspective?

11            *MR. SELESKY:*  Yeah, Judge, I think as far as ADR is

12    concerned, we're fine with case eval.  I think we're in the

13    same boat as DePriest probably as far as where this will go.

14            *THE COURT:*  Mr. Ellison.

15            *MR. ELLISON:*  The only -- not to be the odd man

16    out -- the only reason why I suggested mediation on this aspect

17    is the fact that my client, with the case -- I mean, we have no

18    problem with case evaluation so long as there's not the

19    attorney fee stinger.  Because we are one attorney, they are

20    paying me, if he doesn't meet the stinger on that part of it

21    for that part, like the usual if you don't beat it by

22    10 percent, he's got bills from three attorneys coming down the

23    pipeline here.  So if the parties were agreeable to go to case

24    evaluation where the penalty for not meeting case evaluation is

25    the no attorney's fees punishment, we would find that process

1    to be -- I mean, essentially it would be a recommendation of

2    three attorneys as a means to settlement, I would be open to

3    that idea.

4                THE COURT:  All right.  Well, go ahead.

5                MR. LAWLER:  Your Honor, I didn't mean really when I

6    said, "No, thank you."  I'm open to whatever you tell us to do.

7    I just don't think from my client's perspective it's -- and I

8    would also assert it's Mr. Ellison's client who sued this

9    number of defendants, so he kind of took that path.

10               THE COURT:  Okay.  Well, as I indicated in my

11   question to Mr. Yanalunas, it does seem on the face of the

12   description a problem from my perspective for the county.  I

13   would be offended if somebody took my equity for a $2,000 bill.

14   And I'll be surprised if the Michigan Supreme Court doesn't

15   find the process a violation of the Constitution.  But we'll

16   see.

17               MR. LAWLER:  Your Honor --

18               THE COURT:  Maybe we'll see here.

19               MR. LAWLER:  If I could add a little perspective.  I

20   represent a number of counties in the tax foreclosure process,

21   and really what happens is there's only a handful of these

22   number of parcels like Mr. Pung's that really come to light.

23   And what ends up happening with parcels like Mr. Pung's, they

24   do help cover the costs of some of the other parcels that

25   are --

1          *THE COURT:*  They what?

2          *MR. LAWLER:*  They do help cover the costs of some of

3     the other parcels, and they do help the chargebacks that are

4     back against all the locals.

5          *THE COURT:*  The problem, though, is that takes

6     property from me that I don't owe to help the government

7     finance other things, and that seems to be what a just

8     compensation clause is meant to prevent.

9          *MR. LAWLER:*  Well, I think there's a lot more to --

10    respectfully, there's a lot more to the process than just a

11    simple -- you know, there's the parcels that have mortgages

12    wiped out.  There's the parcels that have tax liens wiped out.

13    There's the parcels that have mechanic's liens wiped out.

14    There's a whole lot of other things that are wiped out aside

15    from.  Effectively what the treasurer gets is fee-simple title

16    to the property.  So he gets fee-simple title to properties

17    that are dogs -- or she -- and they get fee-simple titles to

18    properties that have some residual value.  So they actually are

19    the owners.

20         *THE COURT:*  I get that.  The problem is, you know,

21    why shouldn't they have to account back to the property owner

22    for what is the excess over the taxes?  And maybe there's facts

23    in this case that make, you know, the value not as significant

24    as the plaintiff claims.  But if it's as the plaintiff claims,

25    you know, a $2,000 tax bill and 180 to 200 hundred thousand in

 1    equity, I mean, if I were a defendant, that's a case I'd want

 2    to settle to preserve my argument on all the other issues.

 3    That's all.  So . . .

 4          MR. YANALUNAS:  Thank you, Judge.

 5          THE COURT:  Anyway, what I'll do is case evaluation

 6    at the end of discovery.  I don't think mediation works unless

 7    everybody is on board with it.  And everybody is not on board.

 8    And from the perspective of the individual defendants, I can

 9    understand that.  Their position is different, I think, than

10    the county.

11          And as far as the case evaluation sanctions, under

12    our rules there aren't sanctions on federal question cases.

13    The only time the sanctions come into play under the Michigan

14    rule is when the underlying claims are Michigan claims, and

15    they really aren't here.  They are all constitutional claims.

16    So it will be the three lawyers giving you their opinion of

17    value at the end of discovery.  And if the parties go forward

18    and decide they want to handle it differently, like go to

19    mediation, you can do that.  You can let me know and we can

20    make an amendment.  But otherwise we'll put case evaluation at

21    the end of discovery for now.

22          All right.  Anything else today?

23          MR. ELLISON:  No, Judge.  Thank you very much.

24          THE COURT:  From any of the defense lawyers?

25          MR. LAWLER:  Thank you, Your Honor.

1          MR. YANALUNAS:  No, Your Honor.  Thank you.

2          THE COURT:  Okay.  Thank you.

3          MR. SELESKY:  Thank you, Judge.

4          THE CLERK:  Court is adjourned.

5       (Proceeding concluded at 3:52 p.m.)

6                    *   *   *   *   *

7          I certify that the foregoing is a correct transcript

8    from the record of proceedings in the above-entitled matter.

9          I further certify that the transcript fees and format

10   comply with those prescribed by the court and the Judicial

11   Conference of the United States.

12

13   Date:  July 19, 2019

14

15                        **/s/ Glenda Trexler**

16                        _____
                          Glenda Trexler, CSR-1436, RPR, CRR

17

18

19

20

21

22

23

24

25